IN THE UNITED STATES DISTRICT COURT FOR
              THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                    *
FLORENCE E. SCOTT,                  *
    Plaintiff,                      *
        v.                          *    CIVIL NO.: WDQ-09-3239
THE PNC BANK CORP. AND              *
AFFILIATES LONG TERM
DISABILITY PLAN,                    *
    Defendant.                      *

*   *   *   *   *   *   *   *   *   *   *   *   *

MEMORANDUM OPINION

Florence Scott sued PNC Bank Corporation and Affiliates Long Term Disability Plan ("the Plan") for violating the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* For the following reasons, the parties' cross motions for summary judgment will be denied, and Scott's claim will be remanded to the plan administrator for a full and fair review.

I.  Background[1]

Scott worked as a Branch Financial Sales Consultant II at PNC, selling PNC bank products, referring customers to PNC Bank

---

[1] On cross-motions for summary judgment, "each motion [is] considered individually, and the facts relevant to each [are] viewed in the light most favorable to the non-movant." *Mellen v. Bunting,* 327 F.3d 355, 363 (4th Cir. 2003).

specialists, and ensuring branch compliance with internal operating procedures. Admin. Rec. 36-39, 53. Her job was sedentary and required "repetitive use of [her] hands" for "[s]imple grasping." *Id.* 41.

Scott was a full-time employee, and participated in PNC's employee benefit plan. *Id.* 53. The Plan provides long-term disability benefits, paid monthly at the end of a 90 day elimination period, to plan participants who provide proof that they are "totally disabled." *Id.* 173-74. A participant is "totally disabled" when:

> Because of Injury or Sickness (a) the Participant cannot perform each of the material duties of his or her regular occupation; and (b) after benefits have been paid for 24 months, the Participant cannot perform each of the material duties of any gainful occupation for which he or she is reasonably fitted by training, education, or experience.

*Id.* 173-74.

Beginning in September 2008, Scott was treated by doctors Stacy Berner, Myles Brager, and Alvin Antony for numbness and pain in her arms, hands, and neck. *Id.* 67-90. On October 8, 2008, Dr. Antony performed nerve conduction electrodiagnostic tests and found that "[a]ll examined muscles showed no evidence of electrical instability." *Id.* 80-81. He concluded that there was "[n]o evidence of carpal tunnel or cervical radiculopathy." *Id.* 81.

On December 3, 2008, Dr. Antony performed a second series of electrodiagnostic tests, finding "increased spontaneous activity" in some of Scott's arm and hand muscles, but that "[a]ll remaining muscles showed no evidence of electrical instability." *Id.* 78. Dr. Antony concluded that the results "demonstrate[d] interval development of right ulnar axonal degeneration in the area about the elbow consistent with a clinical impression of severe right [cubital tunnel syndrome]" and that there was "[n]o evidence of cervical radiculopathy at this time." *Id.*

On December 11, 2008, Dr. Brager concluded that an MRI of Scott's spine revealed "degenerative disk changes at C5-6 and C6-7," which were "consistent with both cervical radiculopathy from the C5-6 and C6-7 levels and also right cubital tunnel syndrome," making Scott "a candidate for a right cubital tunnel release."[2] *Id.* 68-69. On January 6, 2009, Scott underwent right cubital tunnel release surgery. *Id.* 66. She stopped going to work after the surgery. *Id.*

On March, 12, 2009, Scott followed up with Dr. Brager; he noted that she had "improved from the standpoint of her ulnar nerve symptoms. However, she . . . had ongoing pain in her neck that radiates to the right scapula and down the right arm which

---

[2] Brager's conclusions were based on a October 16, 2008 MRI. Admin. Rec. 68.

is aggravated by right lateral bending and right lateral rotation of the neck." *Id.* 63.

Upon examination, Dr. Brager determined that Scott had "[p]ersistent right cervical spondylotic radiculopathy" and that she would "eventually need anterior cervical surgery to decompress the C5-6 and C6-7 levels." *Id.* Because Scott could not "tolerate another surgery," Dr. Brager treated the cervical spondylotic radiculopathy with a cervical collar and home traction, and directed Scott to follow-up a week later to assess the helpfulness of that treatment. *Id.*

On April 15, 2009, Scott applied for long-term disability benefits. *Id.* 43-51. She stated that her disability was in the "right side of [her] neck, hand [and] elbow," and that she was unable to perform her job function of "using the computer all day" because she could "not sit in one position too long" and her hand was swollen. *Id.* 43.

On April 24, 2009, case manager Michael Middleton received Scott's application for benefits and her claim evaluation authorization form. *Id.* 43, 47. The authorization form gave Scott's consent to "any health care provider . . . that ha[d] information about [her] health to disclose . . . this information to persons who administer claims for [the Plan]." *Id.* 47.

On April 28, 2009, Middleton requested information from Dr. Brager on Scott's condition. *Id.* 59. Brager wrote to Middleton that Scott would "eventually need anterior cervical surgery" and was "resting [her] neck with a cervical collar and doing home traction." *Id.* Dr. Brager stated that Scott was currently unable to work and would be re-evaluated on May 21, 2009. *Id.*

Middleton referred Scott's file to Dr. Robert Pick, an independent orthopedic surgery specialist, for evaluation. *Id.* 97. In his report, Dr. Pick stated that he tried to conduct three teleconferences with Dr. Brager, but Dr. Brager had not returned his calls. *Id.* 93, 97. Dr. Pick reviewed Scott's medical records from October 8, 2008 through April 3, 2009 and concluded that there was "no objective medical information in the records to support the employee's complete inability to work." *Id.* 93-94.

On June 11, 2009, Middleton denied Scott's claim. *Id.* 96-97. The denial stated:

> [Y]ou report that you are disabled due to right cubital tunnel syndrome and cervical spondylotic radiculopathy. . . . We contacted you on April 28, 2009 for more information concerning your condition. During the interview, you stated that you are able to complete the basic activities of daily living but you are unable to sit for long periods of time, unable to move your neck up/down, and you are unable to turn your neck to the right. . . . [S]ymptomatology and diagnostic testing has not validated the clinically significant condition to validate operative intervention, certainly not in the cervical spine. The electrodiagnostic testing did not confirm a

> significant condition to warrant operative
> intervention. Based on the clinical findings, you
> would not be prevented from performing your
> unrestricted sedentary occupation as Branch Financial
> Sales Consultant II.

*Id.* 96-97. The letter also explained that Dr. Pick had been unable to reach Dr. Brager. *Id.*

Scott appealed the denial on July 1, 2009. *Id.* 102. In her letter requesting an appeal, Scott stated that the denial letter failed to mention that she had told Middleton "about numbness in my thigh, swelling in my hand, my inability to use computers, and that I told him that because I was not being paid . . . I cannot afford to undergo therapy." *Id.* She also explained that she spoke with Dr. Brager, who told her that he was unable to respond to Dr. Pick's calls because "Dr. Pick was unknown to him and thus he could not divulge information about a patient" without violating the Health Insurance Portability and Accountability Act of 1996 and the Patient Safety and Quality Improvement Act of 2005. *Id.*

Scott was given an opportunity to submit additional medical information to support her appeal. She provided May 21, 2009 and July 30, 2009 spinal follow-up reports from Dr. Brager. *Id.* 106, 130. The May 21, 2009 report stated:

> [Scott] continues to have neck pain . . . with
> associated numbness and tingling paresthesias. She has
> some mild diffuse swelling of the forearm, wrist, and
> hand. Some of this seems possibly residual from her
> recent ulnar nerve surgery. However, I also suspect

>that the swelling is promoted by the lack of use of her
>right arm as a result of the radicular pain, paresthe-
>sias and weakness.

*Id.* 130.

The July 30, 2009 report stated:

>[Scott] . . . ha[s] some moderate, diffuse swelling of
>the right forearm and hand. She has weakness of right
>hand grip strength and intrinsic[] strength is 3 to
>4/5. She has pain on neck extension and cervical
>compression reproduces radicular symptoms into the
>right scapula and right upper extremity . . . [Scott]
>is clearly unable to work. With her neck condition
>she is not capable of sitting and looking at a
>computer monitor for extended periods of time. With
>the ongoing right upper extremity symptoms she is
>incapable of the manual aspect of her job. [Scott]
>will need . . . anterior cervical decompression and
>fusion C5 through C6.

*Id.* 106.

Scott's supplemented file was referred to Dr. William Andrews, an independent orthopedic surgery specialist, for evaluation. *Id.* 150-53. Dr. Andrews reviewed Scott's medical files from September 29, 2008 through July 30, 2009 and also reviewed Dr. Pick's evaluation. *Id.* 150-51. He twice attempted to contact Dr. Brager and was unsuccessful. *Id.* 151. Scott was not notified that Dr. Brager could not be reached. *See id.*

Dr. Andrews determined that Scott's files showed "a successful cubital tunnel release," and that electrodiagnostic tests did "not show any significant cervical spondylosis" or "significant radiculopathy." *Id.* 152. He concluded that the

7

MRI had "findings of some cervical degenerative disc disease," but the findings "would not preclude work capacity." *Id.* 152.

On September 15, 2009, appeals specialist Tim Prater denied Scott's appeal:

> [Y]ou were noted to have been disabled only for the period of January 6, 2009 through February 16, 2009 following cubital tunnel release surgery on January 6, 2009. Following this time period, there was no documentation provided noting any evidence of any continued condition of disability or resulting functional impairment of any severity for which normal occupational function as a Branch Sales Consultant II would be precluded . . . You were noted to continue with complaints of arm pain following surgery and MRI findings noted some evidence of cervical disc disease . . . The specialist in Orthopedics indicated that there was no clinical documentation submitted for review which was found to be supportive of any condition of disability. . . Although some findings were referenced, none were documented to be so severe as to restrict, limit, or otherwise completely prevent you from performing the essential functions of your regular occupation . . . no findings . . . support a condition of disability throughout the entire required 90-day elimination period.

*Id.* 6-7.

On December 7, 2009, Scott sued the Plan. ECF No. 2. She moved for summary judgment on July 26, 2010. ECF No. 32. On August 25, 2010, the Plan filed its cross motion for summary judgment. ECF No. 36.

II. Analysis

  A. Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to

8

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[3] In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted). When cross motions for summary judgment are filed, "each motion must be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen,* 327 F.3d

---

[3] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

at 363 (*citing Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003)).

B. The Plan's Summary Judgment Motion

1. Abuse of Discretion

The Plan contends that the denial of long-term disability benefits was not an abuse of discretion because: (1) Scott was afforded several opportunities to submit documentation in support of her claim, (2) all documentation was thoroughly reviewed, and (3) none of the objective evidence showed that Scott was totally disabled. Def.'s Cross Mot. Summ. J. 2. Scott argues that: (1) the refusal to credit Dr. Brager's opinion was arbitrary, (2) the denial was not based on substantial evidence, and (3) the Plan did not comply with ERISA's "full and fair review" requirement. Pl.'s Opp'n 3, 6-7.

When, as here, it is undisputed that an ERISA plan vests discretion in the plan administrator with respect to the benefits at issue, a denial of benefits is reviewed for abuse of discretion.[4] *Guthrie v. Nat'l Rural Elec. Coop. Ass'n Long-Term Disability Plan,* 509 F.3d 644, 649 (4th Cir. 2007). The review is "limited to the body of evidence before the administrator at

---

[4] The Plan states: "The administrator shall have complete and sole discretion with regard" to "determin[ing] the eligibility and status of any Employee," to "interpret the Plan, and the rules and regulations," and to "determine questions of fact, law and mixed questions of fact and law." Admin. Rec. 184.

10

the time it rejected [the] claim," *Donnell v. Metro Life Ins. Co.,* 165 Fed. Appx. 288, 294 (4th Cir. 2006), and the "administrator's decision will not be disturbed if it is the result of a deliberate, principled reasoning process" and "supported by substantial evidence." *Elliott v. Sara Lee Corp.,* 190 F.3d 601, 605 (4th Cir. 1999)(internal quotation marks omitted).

"Substantial evidence is the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that a reasoning mind would accept as sufficient to support a particular conclusion." *Donnell,* 165 Fed. Appx. at 295 (internal quotation marks omitted). A denial of benefits "is neither reasonable nor supported by substantial evidence if an administrator fails to fully consider all ailments affecting the claimant and properly assess their impact." *Hardt v. Reliance Std. Life Ins. Co.,* 540 F. Supp. 2d 656, 661 (E.D. Va. 2008).[5]

The Plan argues that it did not abuse its discretion by deciding that Scott was not totally disabled, and it was not

---

[5] The Fourth Circuit has identified eight non-exclusive factors that courts may consider in determining whether a denial was an abuse of discretion. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan,* 201 F.3d 335, 342-43 (4th Cir. 2000)(factors to consider include language of the plan, purposes of the plan, whether the decision-making process was reasoned and principled, adequacy of materials considered, and fiduciary's motives or conflict of interest).

11

required to credit Scott's treating physicians over the opinions of the independent specialists. Def.'s Cross Mot. Summ. J. 1-2. In the final denial letter, Prater outlined the information he relied on in denying Scott's claim: (1) Dr. Andrews's evaluation, (2) a January 6, 2009 operative report documenting her cubital tunnel release surgery, and (3) Dr. Brager's March 12, 2009, May 21, 2009, and July 30, 2009 reports. *Id.* 5. The denial was heavily based on Dr. Andrews's evaluation, and Prater did not attempt to reconcile or explain Dr. Andrews's and Dr. Brager's differing conclusions. *See id.* 5-7.

Courts may not "impose on plan administrators a discrete burden of explanation when they credit *reliable* evidence that conflicts with a treating physician's evaluation," and the Plan is not required to give special weight to a treating physician's opinion. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003) (emphasis added). Thus, absence of explanation alone does not show an abuse of discretion. *Frankton v. Metro. Life Ins. Co.,* ---F. Supp. 2d---, 2009 WL 31215954, at *7 (D. Md. Sept. 30, 2009). However, the Plan "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Nord,* 538 U.S. at 834.[6] Although it

---

[6] The Plan incorrectly argues that Dr. Brager's opinions are not "objective" evidence of Scott's disability. "While the professional opinions of doctors, based on physical examination of a patient and the related observations . . . are not the same

12

is not an abuse of discretion for an administrator to adopt the reasonably formed opinion of one doctor over another, when the adopted opinion has clear flaws, summary judgment in favor of a plan administrator is inappropriate.[7]

Prater's reliance on Dr. Andrews's evaluation is noteworthy for several reasons. First, Dr. Andrews failed to address Dr. Brager's contradictory findings that Scott was "incapable of the manual aspect of her job," "clearly unable to work," and needed "anterior cervical decompression and fusion" to treat her cervical spondylotic radiculopathy. Admin. Rec. 130. Instead, he simply noted that Dr. Brager "*felt* [Scott] would be out of work because of her pain" before deciding that Scott "could [have] return[ed] to her regular job in spite of persistent numbness and pain." *Id.* 151 (emphasis added). Dr. Andrews did not address the findings of weakened grip and intrinsic strength in Scott's hand, nor explain why he discounted Dr. Brager's conclusions about the severity of Scott's pain, even though Dr. Andrews had not examined her.

---

kind of objective evidence as a CT Scan or an MRI, they certainly are objective evidence in the form of medical opinion based on first hand observation." *Wasson v. Media Gen., Inc.,* 446 F. Supp. 2d 579, 599 (E.D. Va. 2006).

[7] *White v. Eaton Corp. Short Term Disability Plan,* 308 Fed. Appx. 713, 719-20 (denial was abuse of discretion when plan relied on "fundamentally flawed" functional capacity evaluation and failed "to seriously engage in a discussion of [plaintiff's] favorable evidence").

Dr. Andrews's evaluation also fails to reconcile the December 3, 2008 electrodiagnostic testing showing no cervical radiculopathy—to which he appears to defer—with Dr. Brager's later conclusions that Scott had cervical radiculopathy.  *See* Admin. Rec. 63.  He relied on an October 2008 MRI as evidence that Scott was capable of working, despite Dr. Brager's May 21, 2009 conclusion that her condition had worsened to require surgery.  Such a "conclusory and incomplete report does not meet the quantum of evidence that a reasoning mind would accept as sufficient to support a particular conclusion," and the report is further weakened by Dr. Andrews's unexplained reliance on out-dated evidence.  *Hardt,* 540 F. Supp. 2d at 662-63 (vocational report lacked probative value because it was based on an outdated evaluation and failed to assess all of the plaintiff's current conditions).[8]

The flaws in Dr. Andrews's report made it an unreliable basis for determining Scott's ability to work; there is a substantial issue whether the Plan properly considered Scott's

---

[8]  Inexplicably, Dr. Andrews failed to consult Dr. Brager, although the Plan had Scott's authorization form and appeal letter, which explained that Dr. Brager would not return specialists' calls without proof that they had Scott's authorization to contact him.  *See Sanderson v. Cont'l Cas. Corp.,* 279 F. Supp. 2d 466, 474-75 (D. Del. 2003)(denial of benefits was arbitrary when plan administrator heavily relied on report of peer review physician who failed to contact the participant or her treating physician).

claim. There is evidence that the decision to credit Dr. Andrews over Scott's treating physician may have been an abuse of discretion. Viewing the evidence in the light most favorable to Scott, summary judgment in the Plan's favor is inappropriate.[9]

2. Timeliness of Scott's Claim

Although neither Prater nor Middleton addressed the timeliness of Scott's long-term disability claim, the Plan now argues summary judgment should be granted because Scott's application was untimely. Def.'s Cross Mot. Summ. J. 6-7. Scott contends that: (1) her claim was timely, and (2) the Plan waived the timeless argument by failing to raise it earlier. Pl.'s Opp'n 1-2.

The Plan requires that long-term disability claims be filed "within 30 days of the date Total Disability starts, if that is possible" and if "not possible, the Benefits Department must be notified as soon as it is reasonably practicable to do so, but in any event no later than 120 days after the Total Disability starts." Admin. Rec. 184. The Plan now argues that January 6, 2009—the date of Scott's surgery—is the "latest

---

[9] *Compare Hardt,* 540 F. Supp. 2d at 662 (independent specialist's opinion was not substantial evidence contradicting treating physician's opinion when specialist ignored physician's reasoning and conclusions) *with Frankton,* 2009 WL 3215954, at *9 (deferral to independent specialist's opinion over that of treating physician was not abuse of discretion when specialist "detailed his perceived flaws in [treating physician's opinion] and explained the basis for his contrary medical judgment").

15

possible date of Total Disability." Def.'s Cross Mot. Summ. J. 6. Smith filed her claim on April 15, 2009, more than 90 days later.

"[I]nternal appeal limitations periods in ERISA plans are to be followed just as ordinary statutes of limitations." *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005). And, the Fourth Circuit has "ma[de] it very clear that state law principles of waiver and estoppel are not part of ERISA's federal common law." *McCravy v. Metro. Life Ins. Co.*, 2009 WL 3426494, at *7 (D.S.C. June 12, 2009). ERISA does not provide for unwritten modifications of employee benefits plans, and courts may not apply waiver or estoppel to "affect [a plan's] written terms." *Id.; see also Gagliano v. Reliance Standard Life Ins.*, 547 F.3d 230, 239 (4th Cir. 2008). Thus, the Plan is correct that it has not waived the limitations period argument.

However, unlike the cases the Plan relies on, here, the plan administrator made no determination that the claim was untimely. *See Gayle,* 401 F.3d at 225-27 (affirming summary judgment in plan's favor when "[t]he claims administrator-and ultimately the Committee itself-declined to make an exception to their [limitations period]" for the plaintiff). Further, it is not clear that Scott failed to comply with the deadlines, and the Plan incorrectly asserts that Scott has conceded January 6, 2009 as the date of her total disability. *See* Pl.'s Opp'n 1-2.

As explained below, Scott's claim will be remanded to the plan administrator for a full and fair review, which may include a determination of timeliness. *Cf. Berry v. Ciba-Geigy Corp.,* 761 F.2d 1003, 1007 n.4 (4th Cir. 1985) ("The question of eligibility must 'be resolved by the plan in the first instance, not the court.'"). The Plan's motion for summary judgment will be denied.

C.   Scott's Summary Judgment Motion

Scott has moved for summary judgment that the Plan's decision to deny her long-term disability benefits was an abuse of discretion, and she is entitled to those benefits. Pl.'s Mem. Supp. Mot. Summ. J. 12. Scott contends that the medical records presented to the Plan demonstrate that she is totally disabled. *Id.* 12-15.

Summary judgment in Scott's favor is only appropriate if the evidence of her total disability is so overwhelming that she is entitled to judgment as a matter of law. *Hardt,* 540 F. Supp. 2d at 664. The evidence Scott has presented is not so overwhelming. The only evidence of a total disability is Dr. Brager's opinion, and he did not conclude that Scott would never be able to work, and implied that a second surgery could

alleviate her pain. Scott's motion for summary judgment will be denied.[10]

D. Remand

"[T]he administration of benefit and pension plans should be the function of the designated fiduciaries, not the federal courts." *Bernstein v. CapitalCare, Inc.,* 70 F.3d 783, 788 (4th Cir. 1995). Generally, when the plan administrator has failed to comply with ERISA's procedural guidelines and provide a "full and fair review" of the participant's claim, "the proper course of action for the court is remand to the plan administrator" to provide the required review. *Weaver v. Phoenix Home Life. Mut. Ins. Co.,* 990 F.2d 154, 159 (4th Cir. 1993). Remand is "most appropriate whe[n] the plan itself commits the trustees to consider relevant information which they failed to consider or whe[n] the decision involves records that were readily available." *Elliott v. Sara Lee Corp.,* 190 F.3d 601, 607 (4th Cir. 1999)(internal quotations marks omitted).

---

[10] *Compare Duperry v. Life Ins. Co.,* 2011 WL 199087, at *11 (4th Cir. Jan. 24, 2011)(participant entitled to summary judgment when treating physicians stated she was "permanently disabled" and "could never return to work," she was prescribed increasingly high dosages of pain killers, and evidence included home DVD showing severity of her condition and supporting statements from relatives and supervisor) *and Hardt,* 540 F. Supp. 2d at 664 (denying summary judgment to participant whose treating physician opined that she would have "difficulty working on a sustained basis" and would experience "pain or other symptoms severe enough to interfere with attention and concentration").

Given the policy favoring resolution by the plan administrator, and the Plan's failure to address adequately Scott's evidence or contact Dr. Brager, remand is appropriate so that her claim can be decided after the "full and fair review" ERISA requires. *See, e.g., Hardt,* 540 F. Supp. 2d at 664 (remanding long-term disability claim when denial was based on incomplete information, "demonstrat[ing] that [the plaintiff] did not get the kind of review to which she was entitled under applicable law"). Scott's claim will be remanded to the Plan for reconsideration consistent with this Memorandum Opinion.

III. Conclusion

For the reasons stated above, the cross motions for summary judgment will be denied. Scott's claim will be remanded to the Plan.

February 14, 2011　　　　　　　　　_____/s/_____
Date　　　　　　　　　　　　　　　William D. Quarles, Jr.
　　　　　　　　　　　　　　　　　United States District Judge