IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FLORENCE E. SCOTT,                     *

    *Plaintiff,*                             *

v.                                           *         Case No.: WDQ-09-3239

PNC BANK CORP. & AFFILIATES     *
  LONG TERM DISABILITY PLAN,
                                      *

    *Defendant.*
                                      *
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the Motion Requesting Attorney's Fees and Costs, EFC No. 43, that Plaintiff Florence E. Scott filed, along with a Memorandum in Support, ECF No. 43-1; and the Opposition to Plaintiff's Motion for Attorney's Fees and Costs, EFC No. 46, that Defendant PNC Bank Corporation and Affiliates Long Term Disability Plan ("the Plan") filed.[1] Plaintiff has not filed a reply, and the time for doing so has passed. *See* Loc. R. 105.2. Having reviewed these filings, I have determined that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons stated herein, I recommend that Plaintiff's Motion Requesting Attorney's Fees and Costs be DENIED WITHOUT PREJUDICE.

    I.       FACTUAL AND PROCEDURAL HISTORY

When Plaintiff, a PNC employee, experienced "numbness and pain in her arms, hands, and neck," she went to her treating physician, Dr. Alvin Antony, who opined that she had "'cervical radiculopathy'" and "'right cubital tunnel syndrome.'" Feb. 15, 2011 Mem. Op.

---

[1] On May 6, 2011, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Quarles referred this case to me to provide a Report and Recommendation on Plaintiff's Motion. ECF No. 47.

1

("Mem. Op.") 2-3 (quoting Admin. Rec.), EFC No. 40. Plaintiff had surgery to address her pain but, when it continued, she saw another physician, Dr. Myles Brager, who said that Plaintiff would "'need anterior cervical surgery to decompress the C5-6 and C6-7 levels,'" but that she could not "'tolerate another surgery.'" *Id.* at 4 (quoting Admin. Rec.). Dr. Brager opined that Plaintiff "was currently unable to work." *Id.* at 5.

Plaintiff applied for long-term disability benefits through her employer's plan, PNC Bank Corporation and Affiliates Long Term Disability Plan, Defendant to this action. Mem. Op. 1. The Plan administrator referred the file to Dr. Robert Pick for review. *Id.* Dr. Pick tried unsuccessfully to contact Dr. Brager and then, based on his review of Plaintiff's file, but contrary to Dr. Brager's opinion, "concluded that there was 'no objective medical information in the records to support the employee's complete inability to work.'" *Id.* (quoting Admin. Rec.). The Plan administrator determined that Plaintiff was not entitled to long-term disability benefits and denied her request for benefits. *Id.* at 5.

Plaintiff filed an administrative appeal and submitted additional medical records. *Id.* at 6. The Plan administrator referred her file to an independent orthopedic surgery specialist, Dr. William Andrews, who also tried to contact Dr. Brager without success and then found, contrary to Dr. Brager's finding, that Plaintiff's condition "'would not preclude work capacity.'" *Id.* at 7-8 (quoting Admin. Rec.). Again, without reconciling these contradictory findings, the Plan administrator denied Plaintiff's appeal. *Id.* at 8.

Thereafter, Plaintiff filed an action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, seeking a court order for long-term disability benefits from the Plan. EFC No. 2. Both parties moved for summary judgment, EFC Nos. 32 & 36, and the Court denied both motions. Mem. Op. 19; February 15, 2011 Order, ECF No. 41.

Noting "the Plan's failure to address adequately Scott's evidence or contact Dr. Brager," and reasoning that "the decision to credit [the independent orthopedic surgery specialist] over Scott's treating physician may have been an abuse of discretion," the Court remanded the claim to the Plan administrator for a "full and fair review." Mem. Op. 15, 19. Before the Plan administrator issued its reconsideration, Plaintiff moved for attorney's fees and costs.

The Plan administrator issued its reconsideration on June 2, 2011 ("Recons."), upholding its previous decision. ECF No. 53. The Plan administrator explained that Ms. Scott's file was referred to two board-certified orthopedic surgeons and a third physician, who is board-certified in Physical Medicine and Rehabilitation. Recons. 2. They all reviewed Ms. Scott's medical records. *Id.* at 2-4. One physician spoke with Dr. Brager and one of Ms. Scott's other physicians, one only spoke with Dr. Brager, and one did not succeed in reaching Dr. Brager and instead relied solely on the existing medical documentation. *Id.* Based on their reports and Ms. Scott's medical records, the Plan administrator found:

> There is no objective medical information in the records to support that Ms. Scott is unable to work after recovering from her surgery. The symptomatology does not validate the clinical condition. . . . There was no documentation in the medical records to support the need for the surgery and why Ms. Scott['s] condition would limit her ability to perform her job duties or activities of daily living.

*Id.* at 5. The Plan administrator concluded:

> Ms. Scott is not entitled to benefits under the Plan because, although some subjective findings were referenced, no physician provided documentation to establish that the subjective complaints were so severe as to restrict, limit or otherwise completely prevent Ms. Scott from performing the essential functions of her sedentary occupation as of February 17, 2009.

*Id.*

## II. DISCUSSION

Plaintiff, relying on 29 U.S.C. § 1132(g)(1), insists that she is entitled to all expenses and attorney's fees that she has incurred in this proceeding. Pl.'s Mot. 1. Defendant argues that the Court's denial of Plaintiff's Motion for Summary Judgment bars a claim for attorney's fees because the Court's remand to the Plan administrator is not "success on the merits," and the factors to consider in determining whether attorney's fees are appropriate, outlined in *Quesinberry v. Life Insurance Co. of North America*, 987 F.2d 1017, 1029 (4th Cir. 1993), do not weigh in favor of ordering attorney's fees in this matter. Def.'s Opp'n 2.

29 U.S.C. § 1132(g)(1) provides that, with exceptions not relevant here, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party" in an ERISA action "by a participant, beneficiary, or fiduciary." To recover attorney's fees pursuant to 29 U.S.C. § 1132(g)(1), the party requesting attorney's fees need not be a "prevailing party," but the party must be able to show "some degree of success on the merits." *Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149, 2158 (2010). *Hardt* is instructive.

Ms. Hardt experienced neck and shoulder pain, which was diagnosed as carpal tunnel syndrome. *Id.* at 2152. She sought long-term disability benefits from her employer, and the plan administrator denied her application for benefits. *Id.* at 2150. Ms. Hardt filed an administrative appeal, resulting in an award of temporary disability benefits. *Id*. Near the close of the temporary disability award, Ms. Hardt experienced additional symptoms and applied for long-term disability benefits, but the plan administrator denied her application. *Id.* at 2153. She subsequently filed another administrative appeal. *Id*. The physician reviewing her medical file, which included an updated evaluation, opined that Ms. Hardt was not entitled to long-term disability benefits as her health eventually would improve. *Id*.

After exhausting all administrative remedies, Ms. Hardt filed a complaint in the United States District Court, claiming that the plan violated ERISA by wrongfully denying her request for benefits. *Id.* The parties each moved for summary judgment, and the court denied both motions. *Id.* at 2154. The district court remanded the claim to the plan administrator to reconsider, and stated that in the event that full reconsideration under the requirements of ERISA did not occur within thirty days, the court would be inclined to enter judgment in Ms. Hardt's favor. *Id.* at 2150. Upon review, the plan administrator issued an award for benefits. *Id.* at 2154. Thereafter, Ms. Hardt filed a motion seeking attorney's fees. The district court awarded attorney's fees on the basis that Ms. Hardt was a prevailing party. *Id.* at 2150. On appeal, the Fourth Circuit vacated the fee award, holding that a party must prevail in order to obtain attorney's fees, and that Ms. Hardt did not prevail. *Id.*

The Supreme Court held that 29 U.S.C. § 1132(g)(1) does not require prevailing party status to obtain attorney's fees, *id.* at 2157, explaining: "A court 'in its discretion' may award fees and costs 'to either party,' as long as the fee claimant has achieved 'some degree of success on the merits.'" *Id.* at 2151-52 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). It cautioned that "some degree of success" is "not satisfied by achieving 'trivial success on the merits' or a 'purely procedural victory.'" *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688). A party achieves "some degree of success . . . . if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue'" *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688). The Court reasoned that the legislative intent was not to abandon completely the American Rule—that each party bears its own litigation costs—, but to provide

5

the court with broad discretion in awarding attorney's fees to either party upon the showing of some success. *Id*.

The Supreme Court noted that the success in *Hardt* consisted of a court order requiring the plan administrator to reconsider Ms. Hardt's claim for benefits, with the restriction that further court action—likely in Ms. Hardt's favor—would ensue if the plan administrator did not adequately reconsider the claim. *Id.* at 2158-59. As well, the ultimate result was a reversal of the previous denial, and an award of benefits, which was the exact relief Ms. Hardt sought in pursuing a court action. *Id*. Additionally, the Supreme Court noted that the district court, after reviewing Ms. Hardt's medical records, found "compelling evidence" that she was totally disabled, and that under the district court's analysis, Ms. Hardt would be entitled to long-term disability benefits. *Id.* at 2151. The Supreme Court expressly left for another day whether a "remand order, without more" constitutes the requisite degree of success on the merits. *Id.* at 2158.

Since *Hardt*, neither the Fourth Circuit nor the United States District Court for the District of Maryland has addressed whether, in an ERISA action, a party whose case has been remanded to a plan administrator "without more" has achieved "some degree of success on the merits." *See Hardt*, 130 S. Ct. at 2158. Few courts in other jurisdictions have considered the issue since *Hardt*. Of those, the more persuasive have concluded that a remand alone constitutes success on the merits. For example, in *Olds v. Retirement Plan of International Paper Co.*, No. 09-0192-WS-N, 2011 WL 2160264, at *1 (S.D. Ala. June 1, 2011), the court remanded the plaintiff's claim for retirement disability benefits to the Retirement Plan, which had previously denied the plaintiff's claim. The court said that "the Plan failed to provide the plaintiff the 'full and fair review' required by statute," noting that it "completely ignored" the medical records the

6

plaintiff submitted that "substantiat[ed] the existence of [his] condition," and "completely ignored the plaintiff's stated basis of disability." *Id.* The court "did not direct the Plan to award benefits or indicate that benefits should be awarded." *Id.* at *2. Nonetheless, the court "conclude[d] that the plaintiff ha[d] obtained a degree of success on the merits sufficient to trigger the Court's discretion whether to award fees and expenses." *Id.* at *3. It observed that "[l]ower court cases citing [*Hardt*, 130 S. Ct. 2149, and *Ruckelshaus v. Sierra Club*, 643 U.S. 680 (1983) (requiring "some degree of success on the merits" for an award of attorney's fees)] have usually concluded that a remand to the defendant to conduct further administrative proceedings is not a merely procedural victory but reflects a sufficient degree of success on the merits to qualify for an award of fees and expenses." *Id.* (citing in support *Michigan v. U.S. Envtl. Prot. Agency*, 254 F.3d 1087, 1091 (D.C. Cir. 2001); *Frye v. Metro. Life Ins. Co.*, No. 3:10-0107, 2011 WL 466686, at *5 (W.D. W. Va. 2011); *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 748 F. Supp. 2d 903, 911-12 (N.D. Ill. 2010); *Bowers v. Hartford Life & Accident Ins. Co.*, No. 2:09-CV-290, 2010 WL 4117515 at *2 (S.D. Ohio 2010); *Blajei v. Sedgwick Claims Mgmt. Servs.*, No. 09-13232, 2010 WL 3855239 at *3-4 (E.D. Mich. 2010); citing as cases to the contrary *Dickens v. Aetna Life Ins. Co.*, No. 2:10-cv-00088, 2011 WL 1258854, at *5 (W.D. W. Va. 2011); *Christoff v. Ohio N. Univ. Emp. Benefit Plan*, No. 3:09CV540, 2010 WL 3958735, at *2 (N.D. Ohio 2010)).

In concluding that a remand to a plan administrator, without more, was sufficient success on the merits, the court reasoned that "the actual floor [for sufficient success on the merits] must be far below the *Hardt* scenario," because in *Hardt*, 130 S. Ct. at 2159, the Supreme Court said that that "facts [before it] established '*far more*' than the minimum threshold." *Olds*, 2011 WL 2160264, at *2 (emphasis added). The court said that "a plaintiff has experienced 'some degree

7

of success on the merits' when he presents a claim that the defendant violated his rights and the court rules that the defendant did violate those rights," such as the right to a full and fair review. *Id.* The court distinguished "remands within the four corners of the litigation itself," such as from an appellate court to a trial court, which may be purely procedural, from "remands from the trial court to the administrator." *Id.* at *3 n.2. Further, it said that the fact that the plaintiff was not guaranteed an ultimate award of benefits did "not convert his substantial success on that claim into failure or trivial success." *Id.* at *3. The court explained that while the plaintiff achieved a procedural remedy, it was not a "purely procedural victory," because "[p]rocedural victories are those . . . that do not result in any success on the litigated claim itself," such as "the trial court's denial of an opponent's dispositive motions," and "[p]rocedural remedies . . . follow a substantive victory, which victory necessarily reflects some degree of success on the merits of the litigated claim." *Id.* at *3 & n.2.

Also noteworthy is *Richards v. Johnson & Johnson*, No. 2:08-cv-279, 2010 WL 3219133 (E.D. Tenn. Aug. 12, 2010), in which the plaintiff "sought judicial review of a termination of long-term disability ('LTD') insurance under the Plan [that her employer provided]," and the court "found that Defendants acted arbitrarily and capriciously when they denied Plaintiff's claim, reversed Defendants' decision to terminate Plaintiff's benefits, and remanded Plaintiff's claim to Defendants for a determination of whether Plaintiff was totally disabled for any occupation." *Id.* at *1. The court concluded that attorney's fees could be awarded at that time because the plaintiff "achieved success on the merits by obtaining a remand of the claim." *Id.* at *3. Likewise, in *Blajei v. Sedgwick Claims Management Services*, No. 09-13232, 2010 WL 3855239 (E.D. Mich. Sept. 28, 2010), after the court vacated the defendants' decision to terminate the plaintiff's disability benefits and remanded the case "for full and fair review," the

8

plaintiff moved for attorney's fees. *Id.* at *1. The court concluded that the plaintiff's motion was not premature because "Plaintiff achieved 'some degree of success on the merits'" in that she was "entitled to a fresh review of her claim." *Id.* at *3.

To be sure, in *Richards* and *Blajei*, the courts provided some direction for the plan administrators on remand. In *Richards*, 2010 WL 3219133, at *3, the court noted that the defendants might be able "to substantiate Plaintiff's disability using the medical records currently available in the record," and the court "strongly recommend[ed] that Defendants undertake an extensive and appropriate review of Plaintiff's claim on remand." In *Blajei*, the court stated that that there was a "substantial possibility" that the defendants would grant the plaintiff disability benefits on remand, such that the plaintiff's success was neither "'trivial'" nor "'purely procedural.'" 2010 WL 3855239, at *3 (quoting *Hardt*, 130 S. Ct. at 2158). However, as noted, more recently, the *Olds* court found sufficient success on the merits, after providing no direction on remand. 2011 WL 2160264, at *3. Equivalently, in *Bowers v. Hartford Life & Accident Insurance Co.*, No. 2:09-CV-290, 2010 WL 4117515 (S.D. Ohio Oct. 19, 2010), a case that relied on *Richards*, the court held that remand alone, which would require the plan administrator to consider relevant evidence it had overlooked, was sufficient success for the plaintiff to be eligible for attorney's fees under 29 U.S.C. § 1132(g)(1). *Id.* at *2. The court said that the review "*may* lead to a reinstatement of Bowers' benefits," but it did not guide the plan or opine on the plaintiff's chances on remand. *Id.* (emphasis added).

Similarly, in *Spradley v. Ownens-Illinois Hourly Employees Welfare Benefit Plan*, No. CVI-09-460-RAW, 2011 WL 209164 (E.D. Okla. Jan. 21, 2011), the court considered a motion for attorney's fees that followed its "Order and Opinion and a Judgment, remanding th[e] action to Defendant to further evaluate and reconsider Plaintiff's claim" because the defendant's

9

"decision on Plaintiff's claim was arbitrary and capricious." *Id.* at *1. It noted that "[t]he Supreme Court rejected the argument that 'a court order remanding an ERISA claim for further consideration can never constitute some success on the merits.'" *Id.* (quoting *Hardt*, 130 S. Ct. at 2158) (internal quotation marks and citation omitted). The court concluded that "Plaintiff's success was substantial and was on a central issue." *Id.* It reasoned, *id.*: "He succeeded on his first claim. He argued that the denial of his PTD Life Insurance benefits under the Plan was arbitrary and capricious. The court agreed and remanded his claim for PTD Life Insurance benefits in accordance with the court's Order and Opinion." Thus, the court concluded that achieving a remand was a "substantial" success. *Id.*

Additionally, prior to *Hardt*, the United States District Court for the Eastern District of Tennessee considered a fee petition in *McKay v. Reliance Standard Life Insurance Co.*, 654 F. Supp. 2d 731 (E.D. Tenn. 2009), an ERISA action. The court said, *id.* at 736:

> [W]hile Plaintiff has not experienced ultimate success in the sense of winning his benefits claim against Defendant, he has received another shot at those benefits by achieving a remand. . . . Plaintiff is not a "loser" in any sense; even if he ultimately is ineligible for benefits, he has still seen success on the merits because his case was remanded for further consideration.

Also of note is *Huggins v. Sun Life Assurance Co.*, No. H-07-3694, 2011 WL 677341 (S.D. Tex. Feb. 15, 2011), in which the plaintiff sued for short-term and long-term disability benefits. *Id.* at *1. Because the plaintiff had never applied for long-term benefits, the court "stayed the case and ordered Huggins to apply" for long-term benefits, which led the defendant, ultimately, to award the plaintiff long-term disability benefits. *Id.* Thereafter, the plaintiff moved for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1). *Id.* The court held: "Sun Life's decision to pay long-term benefits is not a 'success on the merits.' *The district court did not thoroughly examine the evidence or remand the case.* Instead of an order to review the record,

this court simply gave Huggins an opportunity to apply for the benefits." *Id.* at *2 (emphasis added). The court's differentiation of the circumstances of the case from a case in which the court reviews the evidence and remands the plaintiff's claim to the plan administrator suggests that the court may have reached a different conclusion regarding the degree of plaintiff's success if it were considering a case it had remanded to a plan administrator. *See id.*

Although not on all fours with this case, *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 748 F. Supp. 2d 903 (2010), also is informative. There, the court entered judgment in the plaintiffs' favor on two of four counts in the first phase of the ERISA class action litigation. *Id.* at 907. Specifically, it "found that Defendants abused their discretion by unilaterally denying benefit payments after determining that the Plan language contained a scrivener's error or mistake" and that they "should have sought to reform the plan document in court." *Id.* Ultimately, however, the court "held that the Plaintiff class members were not entitled to additional Plan benefit distributions." *Id.* at 908. Thus, the plaintiffs did not receive a monetary judgment; they only succeeded insofar as they "successfully established an ERISA violation and forced Defendants to counterclaim to reform the Plan" and "hopefully encourag[ed] the Plan to act more carefully in the future." *Id.* at 912.

Nonetheless, when the plaintiffs moved for attorney's fees, the court concluded that they were eligible for fees because they had achieved "'some degree of success on the merits.'" *Id.* (quoting *Hardt*, 130 S. Ct. at 2158). It emphasized that "the relevant standard is 'some success,' not 'total success.'" *Id.* In reaching its conclusion, the court noted that the *Blajei* and *Richards* courts "found a remand alone enough to meet *Hardt*'s 'some success' standard." *Id.* at 910. Further, it reasoned that "ERISA's statutory structure also suggests that a party may achieve 'some degree of success' even without a monetary judgment" because it "provides that a

11

beneficiary may bring suit to . . . enjoin any act or practice which violates ERISA or the terms of the plan; or obtain other equitable relief to redress an ERISA violation or enforce ERISA's provisions." *Id.* The court concluded that "a court's determination that a plan administrator abused its discretion in interpreting a plan constitutes 'some degree of success'" because "[i]t redresses an ERISA violation and is a necessary step to clarifying beneficiaries' future rights under the plan." *Id.* at 910-11.

The few cases to the contrary are neither binding nor persuasive. Two cases relied on pre-*Hardt* case law to conclude that a remand to a plan administrator did not constitute "success on the merits." *See Christoff v. Ohio N. Univ. Empl. Benefit Plan*, No. 3:09CV540, 2010 WL 3958735, at *2 (N.D. Ohio Oct. 8, 2010) (relying on pre-*Hardt* case law that discussed what constitutes a "prevailing party" or "final decision," and reasoning that its remand was "based on procedural flaws"); *Mohamed v. Sanofi-Aventis Pharm.*, No. 06 CIV. 1504, 2010 WL 2836617, at *1 (S.D.N.Y. July 19, 2010) (holding that plaintiff's motion for attorney's fees, filed prior to plan administrator's final decision, was premature). A third case distinguished *Hardt* with little analysis. *See Dickens v. Aetna Life Ins. Co.*, No. 2:10-cv-00088, 2011 WL 1258854, at *6 (S.D. W. Va. March 28, 2011). There, the court concluded that "attorney's fees [were] not warranted at [that] time" because the court's remand to the plan administrator "represent[ed] a purely procedural victory for Plaintiff." The court reasoned that, unlike in *Hardt*, the court had "express[ed] no opinion as to whether Plaintiff [was] totally disabled." *Id.*

*Kenseth v. Dean Health Plan, Inc.*, No. 08-cv-1-bbc, 2011 WL 901388, at *15 (W.D. Wis. Feb. 14, 2011), in which the court said that a remand was not success on the merits, is readily distinguished because there, the case was remanded to the trial court from the appellate court, by no means ending the litigation, rather than remanded to a plan administration from a

12

trial court, which ends the litigation.  Indeed, the *Kenseth* court noted that cases involving remands to plan administrators were distinct because in such cases "the plaintiff received all the relief it could from the district court." *Id.*  Moreover, in *Kenseth*, the lower court on remand "concluded that plaintiff [was] not entitled to any relief," such that the plaintiff could not "argue successfully that she . . . had 'some success' on her claim." *Id.*

This Court concludes that a remand to a plan administrator that does not guide the administrator toward awarding long-term disability benefits to the plaintiff, or in any other way earmark the plaintiff's claim for monetary success, nonetheless is sufficient success on the merits for the plaintiff to be eligible for attorney's fees.  *See Hardt*, 130 S. Ct at 2158; *Olds*, 2011 WL 216024, at *3; *Spradley*, 2011 WL 209164, at *1; *Bowers*, 2010 WL 4117515, at *2; *McKay*, 654 F. Supp. 2d at 736; *see also Huggins*, 2011 WL 677341, at *2; *Blajei*, 2010 WL 3855239, at *3; *Richards*, 2010 WL 3219133, at *3.  The plaintiff, once sidelined, is now back in the game, with another shot at reaching his or her goal.  Even if the plaintiff does not win the game, he or she won the opportunity to play a little longer.  *See Blajei*, 2010 WL 3855239, at *3; *McKay*, 654 F. Supp. 2d at 736.  Also, on remand, the plan administrator is bound by court order to follow its proper procedures.  Whether the court found that the plan violated ERISA, or simply that it may have abused its discretion in denying benefits, the plan administration will have to show that it reached its conclusion fairly on remand.  *See Olds*, 2011 WL 216024, at *3; *Spradley*, 2011 WL 209164, at *1; *Young*, 748 F. Supp. 2d at 910-11.  In neither regard is plaintiff's success trivial.

Further, the plaintiff's success is "on the merits" and is not a purely procedural victory.  To determine whether a remand is appropriate, the court reviews the plaintiff's claim and the evidence presented to the plan administrator regarding the plaintiff's disability.  Put another way, the court considers the merits of the case and reaches it conclusion on that basis.  Although a

remand to a plan administrator may not resolve the plaintiff's disability claim, it fully resolves the litigation and therefore is more than just a procedural victory. *See Olds*, 2011 WL 2160264, at *3 & n.2.

Notably, it is not the federal courts' function to administer benefit plans. *See Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995). Rather, "where the plan administrator has failed to comply with ERISA's procedural guidelines . . . , the proper course of action for the court is remand to the plan administrator for a 'full and fair review.'" *Weaver v. Phoenix Home Life. Mut. Ins. Co.*, 990 F.2d 154, 159 (4th Cir. 1993) (citation omitted); *see Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008) (same). ERISA's procedural guidelines provide, *inter alia*, that "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair hearing by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133 (1988); *see* 29 C.F.R. § 2560.503-1(g) (1) ("Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which *a full and fair review of the claim and its denial may be obtained. . . .*") (emphasis added). Thus, failure to provide a "full and fair hearing" is an ERISA violation, *see* 29 U.S.C. § 1133, that should be remedied through a remand to the plan administrator. *See Weaver*, 990 F.2d at 159. However, when "the evidence clearly shows that [the plan administrator] abused its discretion," the court may grant summary judgment in favor of the plaintiff instead of remanding the case. *See id.* Therefore, whether ERISA plaintiffs' cases are disposed of on summary judgment or remanded, the plaintiffs have "received all the relief [they] could from the district

court." *Kenseth*, 2011 WL 901388, at *15 (referring to *Richards* and *Blajei*). An order for all possible relief is, without question, a significant degree of success on the merits.

Moreover, in analogous case law, the Fourth Circuit has stated that "[a] party who obtains a remand order requiring an administrative agency to properly perform its regulatory duties has achieved some degree of success on the merits, as [the Fourth Circuit] decisions in *Hanson* and *Norton* have established."[2] *W. Va. Highlands Conservancy v. Kempthorne*, 569 F.3d 147, 152 (4th Cir. 2009); *see W. Va. Highlands Conservancy v. Norton*, 343 F.3d 239 (4th Cir. 2003); *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313 (4th Cir. 1988). Notably, "some analogies can be made between in-house administrative determinations on ERISA claims and governmental agency decisions." *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir. 1996). As a remand of an agency decision is a victory in that it requires the agency to perform its duties

---

[2] The Fourth Circuit elaborated, *W. Va. Highlands Conservancy*, 569 F.3d at 152-53:

> In *Hanson* the plaintiffs brought a citizen suit under the Clean Water Act (the CWA), alleging that the U.S. Army Corps of Engineers (the Corps) failed to make an adequate evaluation of whether a tract of land contained wetlands. *Id*. at 315. The district court agreed with the plaintiffs and directed the Corps on remand to make a properly informed wetlands determination. *Id*. When the plaintiffs' attorneys' fees award was appealed to this court, we held that the plaintiffs were prevailing parties. *Id*. In achieving a remand that ordered the Corps to undertake a proper investigation, the plaintiffs had "served a key purpose of the citizen suit provision which is to ensure that the agencies" properly perform their duties under the CWA. *Id*. at 317.
>
> In *Norton* WVHC filed with OSM a citizen complaint under SMCRA, seeking rescission of mining permits issued to one coal company that allegedly owned or controlled a second coal company that was mining in violation of SMCRA. 343 F.3d at 242-43. OSM determined that the first company did not own or control the second, and WVHC appealed to the IBLA. The Board ordered a remand, concluding that OSM had failed to develop an adequate record on which OSM could make a fully informed decision about the ownership and control issue. *Id*. at 243. In affirming WVHC's eligibility for fees, we held that a "remand order that required OSM to restart the informal review process ... amounted to partial success [because it] required OSM to do a proper job in carrying out one of its duties under SMCRA." *Id*. at 247.

properly, so also is a remand of a plan administrator's determination on an ERISA claim a victory because it requires the plan administrator to perform its duties properly. *See Young*, 748 F. Supp. 2d at 912 ("Just as a remand plays the important role of ensuring that an agency fulfills its statutory duties, *Norton*, 343 F.3d at 246, so the abuse of discretion finding [and consequential remand] here held the Plan to its ERISA duties. . . . Plaintiff successfully established an ERISA violation and [the result may] encourage[] the Plan to act more carefully in the future."); *see also Olds*, 2011 WL 2160264, at *2 (stating that "a plaintiff has experienced 'some degree of success on the merits' when he presents a claim that the defendant violated his rights and the court rules that the defendant did violate those rights," such as the right to a full and fair review by a plan administrator).

Indeed, ERISA is the result of "legislative efforts by . . . the federal . . . government[] to gain some regulatory jurisdiction over private pension plans to assure effective and equitable performance." S. Rep. No. 93-127, at 3 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4838, 4840. Because "various deficiencies exist[ed] in the private pension plan systems," the legislature enacted ERISA to "establish certain minimum standards to which all private pension plans must conform" and "to prescribe legislative remedies" to address the deficiencies. *Id.* at 1, 15. One remedy is judicial review of a plan administrator's determination. *See* 29 U.S.C. § 1132(a) (providing for a participant or beneficiary to bring a civil action in a United States District Court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan," *inter alia*). In this regard, court reviews of plan administrators' ERISA claim determinations are analogous to administrative agency decisions. *See Haley*, 77 F.3d at 88.

Here, the Court, upon finding that the Plan administrator's review "may have been an abuse of discretion," remanded the claim to the Plan administrator for a "full and fair review,"

without directing the administrator's review. Mem. Op. 15, 19. Although the Court did not find that the Plan administrator undoubtedly violated ERISA's procedural guidelines, the result is the same: The Plan administrator was required to perform a second review of Ms. Scott's claim in a manner that complied with ERISA. The Court considered Ms. Scott's medical records in concluding that the Plan administrator's review was inadequate, and the Court issued a final order on the merits when it remanded the claim to the administrator. Ms. Scott's ultimate failure on remand does not detract from her victory in this Court. She succeeded in having the opportunity to present her claim to the Plan administrator for an ERISA-compliant review, and she succeeded in making the Plan comply with ERISA. Thus, under the circumstances attendant here, Plaintiff has achieved a sufficient degree of success on the merits to be eligible for attorney's fees.

That is not to say that an award of attorney's fees is necessarily appropriate, however. This Court awards attorney's fees after "'determin[ing] whether an award of attorneys' fees is appropriate' by 'examining 'five factors,'" *Hardt*, 130 S. Ct. at 2154. Namely, the court considers:

> (1) degree of opposing parties' culpability or bad faith;
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

*Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993) (quoting "five factor test to guide the district court's exercise of discretion in awarding attorneys' fees under ERISA" from *Reinking v. Phila. Am. Life Ins. Co.*, 910 F.2d 1210, 1217-18 (4th Cir. 1990)). Defendant

addressed these factors in its opposition, but Plaintiff has not addressed them. Therefore, I recommend that Plaintiff's motion be DENIED WITHOUT PREJUDICE.

I further recommend that Plaintiff be permitted to file an amended motion that addresses the five factors identified in *Quesinberry*, 987 F.2d at 1029, within fourteen (14) days of the date of this Report and Recommendation. I recommend that Defendant be permitted to re-file its opposition or an amended opposition within fourteen (14) days thereafter, and that Plaintiff then have seven (7) days to respond. After receiving the parties' filings, I will issue a supplemental Report and Recommendation.

### III. CONCLUSION

In sum, I recommend that the Court DENY WITHOUT PREJUDICE Plaintiff's motion and permit the papers to be filed in amended form as outline above.[3]

Dated: June 28, 2011                             /s/
                                          Paul W. Grimm
                                          United States Magistrate Judge

lyb

---

[3] I gratefully acknowledge the assistance of Leah Hauser, a University of Baltimore School of Law student and intern in my Chambers, who assisted in the factual analysis and research for this Report and Recommendation.