IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FLORENCE E. SCOTT,

    Plaintiff

v.                      CIVIL NO.: WDQ-09-3239

PNC BANK CORP. & AFFILIATES
LONG TERM DISABILTIY PLAN,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Florence Scott sued the PNC Bank Corporation Long Term Disability Plan ("PNC") for violating the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Scott has moved for attorney's fees. For the following reasons, the Court will adopt the Magistrate Judge's Report and Recommendations ("R&R") and deny Scott's request for attorney's fees.

I. Background

Scott worked as a Branch Financial Sales Consultant II at PNC Bank, selling PNC products, referring customers to PNC Bank specialists, and ensuring branch compliance with internal operating procedures. ECF No. 33 at 36-39, 53 (sealed).[1] Her

---

[1] The facts in this opinion were publicly stated in the Court's February 15, 2011 Memorandum Opinion. ECF No. 40.

job was sedentary and required "repetitive use of [her] hands" for "[s]imple grasping." *Id.* 41.

Scott was a full-time employee, and participated in PNC Bank's employee benefit plan. *Id.* 53. PNC provides long-term disability benefits, paid monthly at the end of a 90 day elimination period, to plan participants who provide proof that they are "totally disabled." *Id.* 173-74. A participant is "totally disabled" when:

> Because of Injury or Sickness (a) the Participant cannot perform each of the material duties of his or her regular occupation; and (b) after benefits have been paid for 24 months, the Participant cannot perform each of the material duties of any gainful occupation for which he or she is reasonably fitted by training, education, or experience.

*Id.* 173-74.

Beginning in September 2008, Scott was treated by doctors Stacy Berner, Myles Brager, and Alvin Antony for numbness and pain in her arms, hands, and neck. *Id.* 67-90. On October 8 and December 3, 2008, Dr. Antony tested Scott's nerves and found "no evidence of electrical instability [and n]o evidence of carpal tunnel or cervical radiculopathy." *Id.* 80-81. Dr. Antony concluded that the results "demonstrate[d] interval development of right ulnar axonal degeneration in the area about the elbow consistent with a clinical impression of severe right [cubital tunnel syndrome]" and that there was "[n]o evidence of cervical radiculopathy at this time." *Id.*

On December 11, 2008, based on an October 18 MRI, Dr. Brager concluded that Scott's spine showed "degenerative disk changes at C5-6 and C6-7," which were "consistent with both cervical radiculopathy from the C5-6 and C6-7 levels and also right cubital tunnel syndrome," making Scott "a candidate for a right cubital tunnel release." *Id.* 68-69. On January 6, 2009, Scott underwent right cubital tunnel release surgery. *Id.* 66. She stopped going to work after the surgery. *Id.*

On March, 12, 2009, Dr. Brager observed that Scott's ulnar nerve had improved, but her pain continued in her neck, back, and arms, aggravated by "right lateral bending and right lateral rotation of the neck." *Id.* 63. Dr. Brager determined that Scott had "[p]ersistent right cervical spondylotic radiculopathy" and that she would eventually need more surgery. *Id.* Because Scott could not "tolerate another surgery," Dr. Brager treated the cervical spondylotic radiculopathy with a cervical collar and home traction, and directed Scott to follow-up a week later to assess the helpfulness of that treatment. *Id.*

On April 15, 2009, Scott applied to PNC for long-term disability benefits. *Id.* 43-51. She stated that her disability was in the "right side of [her] neck, hand [and] elbow," and that she was unable to perform her job function of "using the computer all day" because she could "not sit in one position too long," and her hand was swollen. *Id.* 43.

On April 24, 2009, case manager Michael Middleton received Scott's application for benefits and her claim evaluation authorization form. *Id.* 43, 47. The authorization form gave Scott's consent to "any health care provider . . . that ha[d] information about [her] health to disclose . . . this information to persons who administer claims for [PNC]." *Id.* 47.

On April 28, 2009, Middleton requested information from Dr. Brager on Scott's condition. *Id.* 59. Brager wrote to Middleton that Scott would "eventually need anterior cervical surgery" and was "resting [her] neck with a cervical collar and doing home traction." *Id.* Dr. Brager stated that Scott was currently unable to work and would be re-evaluated on May 21, 2009. *Id.*

Middleton referred Scott's file to Dr. Robert Pick, an independent orthopedic surgery specialist, for evaluation. *Id.* 97. In his report, Dr. Pick stated that he tried to conduct three teleconferences with Dr. Brager, but Dr. Brager had not returned his calls. *Id.* 93, 97. Dr. Pick reviewed Scott's medical records from October 8, 2008 through April 3, 2009 and concluded that there was "no objective medical information in the records to support the employee's complete inability to work." *Id.* 93-94.

On June 11, 2009, Middleton denied Scott's claim. *Id.* 96-97. The denial stated:

4

> [Y]ou report that you are disabled due to right cubital tunnel syndrome and cervical spondylotic radiculopathy. . . . We contacted you on April 28, 2009 for more information concerning your condition. During the interview, you stated that you are able to complete the basic activities of daily living but you are unable to sit for long periods of time, unable to move your neck up/down, and you are unable to turn your neck to the right. . . . [S]ymptomatology and diagnostic testing has not validated the clinically significant condition to validate operative intervention, certainly not in the cervical spine. The electrodiagnostic testing did not confirm a significant condition to warrant operative intervention. Based on the clinical findings, you would not be prevented from performing your unrestricted sedentary occupation as Branch Financial Sales Consultant II.

*Id.* 96-97. The letter also explained that Dr. Pick had been unable to reach Dr. Brager. *Id.*

Scott appealed the denial on July 1, 2009. *Id.* 102. In her letter requesting an appeal, Scott stated that the denial letter failed to mention that she had told Middleton "about numbness in my thigh, swelling in my hand, my inability to use computers, and that I told him that because I was not being paid . . . I cannot afford to undergo therapy." *Id.* She also explained that she spoke with Dr. Brager, who told her that he was unable to respond to Dr. Pick's calls because "Dr. Pick was unknown to him and thus he could not divulge information about a patient" without violating the Health Insurance Portability and Accountability Act of 1996 and the Patient Safety and Quality Improvement Act of 2005. *Id.*

Scott was given an opportunity to submit additional medical information to support her appeal. She provided May 21, 2009 and July 30, 2009 spinal follow-up reports from Dr. Brager. *Id.* 106, 130. The May 21, 2009 report stated:

> [Scott] continues to have neck pain . . . with associated numbness and tingling paresthesias. She has some mild diffuse swelling of the forearm, wrist, and hand. Some of this seems possibly residual from her recent ulnar nerve surgery. However, I also suspect that the swelling is promoted by the lack of use of her right arm as a result of the radicular pain, paresthesias and weakness.

*Id.* 130. The July 30, 2009 report stated:

> [Scott] . . . ha[s] some moderate, diffuse swelling of the right forearm and hand. She has weakness of right hand grip strength and intrinsic[] strength is 3 to 4/5. She has pain on neck extension and cervical compression reproduces radicular symptoms into the right scapula and right upper extremity . . . [Scott] is clearly unable to work. With her neck condition she is not capable of sitting and looking at a computer monitor for extended periods of time. With the ongoing right upper extremity symptoms she is incapable of the manual aspect of her job. [Scott] will need . . . anterior cervical decompression and fusion C5 through C6.

*Id.* 106.

Scott's supplemented file was referred to Dr. William Andrews, an independent orthopedic surgery specialist, for evaluation. *Id.* 150-53. Dr. Andrews reviewed Scott's medical files from September 29, 2008 through July 30, 2009 and also reviewed Dr. Pick's evaluation. *Id.* 150-51. He twice attempted

to contact Dr. Brager and was unsuccessful. *Id.* 151. Scott was not notified that Dr. Brager could not be reached. *See id.*

Dr. Andrews determined that Scott's files showed "a successful cubital tunnel release," and that electrodiagnostic tests did "not show any significant cervical spondylosis" or "significant radiculopathy." *Id.* 152. He concluded that the MRI had "findings of some cervical degenerative disc disease," but the findings "would not preclude work capacity." *Id.* 152.

On September 15, 2009, appeals specialist Tim Prater denied Scott's appeal:

> [Y]ou were noted to have been disabled only for the period of January 6, 2009 through February 16, 2009 following cubital tunnel release surgery on January 6, 2009. Following this time period, there was no documentation provided noting any evidence of any continued condition of disability or resulting functional impairment of any severity for which normal occupational function as a Branch Sales Consultant II would be precluded . . . You were noted to continue with complaints of arm pain following surgery and MRI findings noted some evidence of cervical disc disease . . . The specialist in Orthopedics indicated that there was no clinical documentation submitted for review which was found to be supportive of any condition of disability. . . Although some findings were referenced, none were documented to be so severe as to restrict, limit, or otherwise completely prevent you from performing the essential functions of your regular occupation . . . no findings . . . support a condition of disability throughout the entire required 90-day elimination period.

*Id.* 6-7.

On December 7, 2009, Scott sued PNC. ECF No. 2. On February 15, 2011, the Court denied cross-motions for summary

7

judgment and remanded Scott's long-term benefits claim to PNC's appellate authority for "the full and fair review ERISA requires." ECF No. 40 at 19 (internal quotation marks and citation omitted). The Court stated that Prater's decision to credit Dr. Andrews over Dr. Brager "may have been an abuse of discretion" because Dr. Andrews "[i]nexplicably . . . failed to consult Dr. Brager." ECF No. 40 at 14 n.8, 15.

On March 3, 2011, Scott moved for an award of attorney fees and costs. ECF No. 43. PNC opposed the motion. ECF No. 46. Pursuant to 28 U.S.C. § 636, the Court referred the motion to Magistrate Judge Paul Grimm for an R&R. ECF No. 47.

On June 2, 2011, PNC issued a reconsideration decision, again denying long-term benefits. ECF No. 53 (sealed). It stated that it referred Scott's file to two board-certified orthopedic surgeons and a third physician, board certified in Physical Medicine and Rehabilitation. ECF No. 55 at 3.[2] One of the doctors spoke with Dr. Brager and another of Scott's physicians. Id. Based on the doctors' reports and Scott's medical records, PNC found that:

> There is no objective medical information in the records to support that Ms. Scott is unable to work after recovering from her surgery. The symptomatology does not validate the clinical condition. . . . There

---

[2] Magistrate Judge Paul Grimm's Report and Recommendation on Scott's first motion for attorney's fees, adopted by the Court without objection on July 18, 2011. ECF No. 57.

was no documentation in the medical records to support
the need for the surgery and why Ms. Scott['s]
condition would limit her ability to perform her job
duties or activities of daily living.

*Id.* (*quoting* ECF No. 53 at 5). PNC concluded that Scott was not entitled to long-term benefits because

[A]lthough some subjective findings were referenced,
no physician provided documentation to establish that
the subjective complaints were so severe as to
restrict, limit or otherwise completely prevent Ms.
Scott from performing the essential functions of her
sedentary occupation as of February 17, 2009.

*Id.* (*quoting* ECF No. 53 at 5).

On June 13, 2011, Judge Grimm recommended denying Scott's motion for attorney fees without prejudice. ECF No. 55 at 1. Judge Grimm concluded that Scott achieved "a sufficient degree of success on the merits to be eligible for attorney's fees." *Id.* at 17. Judge Grimm recommended denying the motion because Scott did not address the *Quesinberry*[3] factors for determining whether attorney's fees are appropriate. *Id.* at 17-18. No objections to the R&R were filed, and on July 18, 2011, the Court adopted the R&R and denied the motion without prejudice. ECF No. 57.

On July 8, 2011, Scott filed an amended motion for attorney fees. ECF No. 56. PNC again opposed the motion. ECF No. 58. On August 9, 2011, Judge Grimm submitted another R&R,

---

[3] *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017 (4th Cir. 1993).

9

recommending that the motion be denied. ECF No. 60 at 1. Scott objected to six conclusions in the R&R. ECF No. 62.

II. Analysis

A. Standard of Review

A reviewing "judge . . . shall make a *de novo* determination of those portions of the [magistrate judge's] report . . . to which objection is made." 28 U.S.C. § 636(b)(1)(C). The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations," and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Arguments raised for the first time in an objection to an R&R are waived. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). The Court will not conduct *de novo* review based on "objections to strictly legal issues [when] no factual issues are challenged." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).[4] In addition, the "Court will reject" an objection that neither conducts "statutory analysis nor cites case law in support." *United States v. O'Neill*, 52 F. Supp. 2d 954, 967 (E.D. Wis. 1989); *cf. Farmer v. McBride*, 177 F. App'x 327, 331 (4th Cir. 2006) (district court need not

---

[4] *See also Hunt v. Rushton*, 33 F. App'x 83, 83 (4th Cir. 2002) ("[A] litigant may forfeit the right to de novo review if . . . the objections are to strictly legal issues and no factual issues are challenged."); *Keeler v. Pea*, 782 F. Supp. 42, 45 (D.S.C. 1992) (objection to a legal conclusion was not entitled to *de novo* review.).

10

review "general and conclusory objections that do not direct the court to a specific error").

B.  *Quesinberry* Factors

A party achieving "some degree of success on the merits" in an ERISA claim is eligible to receive attorney fees, but the decision to award the fees is within the District Court's discretion. *Hardt v. Reliance Std. Life Ins. Co.*, 130 S. Ct. 2149, 2154 (2010). The Fourth Circuit's five-factor test to determine when such an award is appropriate requires consideration of:

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the opposing parties' ability to satisfy an award of attorneys' fees;
> (3) whether such an award would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all the ERISA plan participants and beneficiaries or to resolve a significant legal question regarding ERISA; and
> (5) the relative merits of the parties' positions.

*Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993) (quoting *Reinking v. Phila. Am. Life Ins. Co.*, 910 F.2d 1210, 1217-18 (4th Cir. 1990)). No one factor is decisive; the test "constitute[s] the nucleus of an inquiry which seeks to identify that unusual case in which the judge may shift fees to further the policies of the statute." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir. 1993).

C. Scott's Objections

1. Timeliness of Scott's Reply

Scott argues that Judge Grimm incorrectly stated that Scott failed to file a timely reply to the opposition to her amended motion for fees. ECF No. 62 at 1. In Judge Grimm's first Report and Recommendation, ECF No. 55, which the Court adopted, ECF No. 57, Judge Grimm gave Scott seven days to reply to PNC's opposition to her amended motion, ECF No. 55 at. 18. PNC filed its opposition on July 25, 2011. ECF No. 58. Thus, Scott's reply was due on August 1, 2011. Scott filed her reply on August 10, 2011. ECF No. 61.

Disregarding whether the reply was timely, Judge Grimm considered all the relevant arguments in the reply. Scott's reply raised three points. First, Scott contended that PNC argued Scott had not achieved success on the merits, and "[t]hat ship has sailed." ECF No. 61 at 1. Judge Grimm did not consider Scott's success on the merits in the R&R because the Court adopted his earlier conclusion that Scott had achieved enough success on the merits to be eligible for attorney's fees. ECF Nos. 55, 57. Accordingly, Scott was not harmed because Judge Grimm did not consider whether she was eligible for attorney's fees.

Second, the reply referred Judge Grimm to the arguments in Scott's amended motion for attorney fees that the *Quesinberry*

12

factors favor awarding her costs. *Id.* Judge Grimm considered those arguments in the R&R. ECF No. 60.

Third, it contended that PNC's "conclusory" argument that Scott's counsel's requested fee hours are excessive "is totally without foundation." *Id.* at 1-2. As Judge Grimm decided that Scott is not entitled to fees, the third argument is moot. *See* ECF No. 60 at 1.

### 2. Degree of PNC's culpability

"Culpability connotes wrongful conduct that is not intentional or deliberate . . . [and] can be found where a plan's decision is discernibly against the weight of the evidence." *Jani v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 2005 U.S. Dist LEXIS 44331, *2-3 (D. Md. Nov. 7, 2005) (internal quotation marks omitted).[5] A benefits plan administrator is culpable if its actions "significantly deprive[] a claimant of a fair review of ERISA benefits." *Linck v. Arrow Elecs., Inc.*, No. 07-3078, 2010 WL 2473267 at *3. "[M]ere negligence or error" is insufficient to show culpability

---

[5] *See also Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 809 (6th Cir. 2002) (finding culpability when plan's "decision was arbitrary and capricious and based largely on the opinions of the doctors in its claim department"); *Phillips v. Brink's Co.*, 2009 WL 3681835, at *2 (W.D. Va. Oct. 31, 2009) (holding that a breach in fiduciary duty is evidence of culpability); *Porter v. Hartford Life & Accident Ins. Co.*, 2009 WL 1940520, at *3 (E.D. Ark. July 2, 2009) (holding that an administrator's failure to discover and long delay in correcting an error was culpable conduct).

or bad faith. *Carolina Care Plan Inc. v. McKenzie*, 467 F.3d 383, 390 (4th Cir. 2006) (*quoting Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 641 (4th Cir. 1995)). Misinterpreting the record, or crediting one piece of evidence over another is error, but it is not culpable. *Id.*

Bad faith involves "deliberate misconduct to harm another or advance one's self-interest"; "not every abuse of discretion constitutes bad faith." *Id.* at *3.

Scott contends that Judge Grimm erroneously found that PNC was only "minimal[ly]" culpable.[6] ECF No. 62 at 2. Scott here makes three arguments that she did not raise before Judge Grimm. She argues that PNC was culpable because it "deliberately failed to consider [her] written statements" that she could not prepare food, perform household work, or sit in one position for a long time, that she needed to wear a cervical collar, had home traction several times a day, and had a swollen right hand.[7] *Id.* At the same time she asserts that there is no evidence that Dr. Andrews *received* those writings. *Id.* at 3. She also contends

---

[6] Scott does not suggest that PNC acted in bad faith. *See* ECF No. 62 at 2-3.

[7] In its amended motion for attorney's fees, Scott noted that the Court found PNC "failed to address adequately Scott's evidence." ECF No. 56 Attach. 1 at 4 (*citing* ECF No. 40 at 19). The Court was referencing PNC's evaluating doctor, Dr. Andrews's, failure to "address Dr. Brager's . . . findings," ECF No. 40 at 19, not Scott's statements. The charge of *deliberate* failure to address evidence is also new.

14

that PNC failed to perform an independent medical and vocational examination of her after she consented to them. *Id.* at 2-3. As these arguments were raised for the first time in an objection to the R&R, they have been waived. *Diamond*, 416 F.3d at 315.

Further, they lack merit. PNC considered Scott's interview statements that she was able to "complete the basic activities of daily living but [was] unable to sit for long periods of time." ECF No. 33 at 97. Those statements covered the subjects in the written statements PNC apparently ignored. *See id.* PNC's appeals specialist noted that Dr. Brager indicated Scott's hand was swollen, she wore a cervical collar, and had home traction. ECF No. 33 at 5. Accordingly, there is no evidence that PNC did not consider those facts or that any failure to consider them was deliberate.

PNC was not required to conduct an independent medical evaluation in assessing Scott's claim. *See Piepenhagen v. Old Dom. Freight Line, Inc.*, 395 F. App'x 950, 957 (2010). Accordingly, that it did not conduct such an evaluation is not culpable. *Id.*

Scott asserts that PNC's failure to reach Dr. Brager before issuing its opinion was culpable because PNC should have known Dr. Brager would not speak to them without the necessary patient authorizations (which they failed to provide). ECF No. 62 at 3. Judge Grimm agreed, but noted that the "Court had not concluded

definitively that [PNC] abused its discretion," indicating that PNC's culpability was not clear enough to be more than minimal. ECF No. 60 at 5.

The Court did not find that PNC's denial was "discernibly against the weight of the evidence,"[8] "arbitrary and capricious,"[9] or a breach of fiduciary duty.[10] It found that PNC "may have abused its discretion," and a remand was appropriate to provide a "full and fair review" of the claim. ECF No. 40 at 14, 19. Judge Grimm correctly concluded that PNC was only slightly culpable.

### 3. Benefits to Others

Scott objects to Judge Grimm's conclusion that others will not benefit from the relief she sought. ECF No. 62 at 3-4. Scott contends that "[b]y concluding that Plaintiff sought only to benefit herself in this suit, the Magistrate Judge lost track of the underlying principles of fair review that were upheld that should benefit all claimants." ECF No. 62 at 4. Scott also asserts that the Court's holding "that a full and fair determination is required by [the plan] and slipshod medical reviews that a reasoned mind would not accept is not sufficient"

---

[8] *Jani*, 2005 U.S. Dist LEXIS 44331, *2-3.

[9] *Hoover*, 290 F.3d at 809.

[10] *Phillips*, 2009 WL 3681835, at *2.

answered a significant legal question. *Id.* at 3-4. She does not cite or analyze authority for her assignment of error. *See id.*

The Court need not review Judge Grimm's conclusion *de novo* because these objections lack support and explanation. *O'Neill*, 52 F. Supp. 2d at 967. Under *de novo* review, Judge Grimm's conclusions were correct. That this Court considered whether PNC satisfied the statutory mandates does not benefit others. Resolution of a significant, *novel* question of law would benefit others, but ERISA's "full and fair review" requirement is settled in the statute. *See* 29 U.S.C. § 1133(2) ("[E]very employee benefit plan shall . . . afford a reasonable opportunity . . . for a full and fair review" of a denial of benefits.); *see also Clark v. Met. Life Ins. Co.*, 384 F. Supp. 2d 894, 901 (E.D. Va. 2005) (resolution of novel issue benefits others).

4. Relative Merit of the Parties' Positions

Scott objects to Judge Grimm's conclusion that PNC's position was more meritorious than Scott's. ECF No. 62 at 4. Scott contends that, though the Court did not grant her the relief she sought in her complaint--a monetary judgment against PNC--she "achieve[d] success on her claim that there had not been a full and fair review of her long-term disability claim." ECF No. 62 at 4. PNC asserts that Scott did not sue "to achieve

a remand to the plan administrator"; she sought a judgment that she was entitled to long-term disability benefits. ECF No. 64 at 10.

A claimant's position is more meritorious than that of the plan when the claimant obtains most or all of the outcomes originally sought. *Grooman v. Nw. Mut. Life Ins. Co.*, No. WMN-01-521, 2003 WL 403349 (D. Md. Jan. 8, 2003). A judgment for the claimant may demonstrate a meritorious position. *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 227 (4th Cir. 1998) (plan position was more meritorious when claimant prevailed on one of four claims).

Here, though Scott achieved some success when the Court remanded for a full and fair review, she sought substantially more than a remand. Her complaint requested: (1) a determination of her rights under the long-term disability plan, (2) a monetary judgment against PNC, and (3) attorney's fees. ECF No. 25. The Court did not grant any of those requests. *See* ECF No. 41. Instead, the Court left the determination to PNC without granting a final judgment. *Id.* Accordingly, Scott's position was not more meritorious than PNC's, and Judge Grimm correctly determined that this factor weighs against awarding attorney's fees.

5. Balancing the Factors

Scott relies on her objections to the individual factors to fault Judge Grimm's conclusion that attorney's fees are inappropriate. ECF No. 62 at 4. Scott's objections to the *Quesinberry* factors lack merit and will be overruled. Accordingly, her final objection will be overruled. The Court will adopt Judge Grimm's R&R in its entirety.

III. Conclusion

For the reasons stated above, Scott's objections to the R&R will be overruled; the Court will adopt the R&R and deny Scott's motion for attorney's fees.

12/14/11
Date

William D. Quarles, Jr.
United States District Judge